UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERROL V. WEATHERS,

                              Petitioner,

          v.                                      **DECISION AND ORDER**
                                                  05-CV-139S
JAMES CONWAY, SUPERINTENDENT,

                              Respondent.


## I. INTRODUCTION

On March 2, 2005, Errol V. Weathers ("Weathers" or "petitioner") filed *pro se* a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction

on April 3, 2000, in Supreme Court, Erie County, of one count of murder in the second

degree and two counts of robbery in the first degree.

## II. BACKGROUND

The conviction at issue stems from the shooting death and robbery of James Reid

("Reid" or "the victim"), who was also known as the "numbers man" because he ran an

illegal lottery operation.  (T.135-36.)[1]  Reid ran his operation for approximately twenty

years, and typically collected two hundred and fifty to five hundred dollars daily.  (T. 135-

41, 151-52.)  For at least ten years, Weathers' grandmother placed daily bets with Reid

(except on Christmas), and Weathers sometimes saw Reid at his grandmother's house

collecting money.  (T. 138-40.)

---

[1]  Citations to "T. __" refer to the trial transcript.

**A.    The Trial**

An eyewitness to Reid's shooting, Davaughn Holmes, testified at trial.  On February 7, 1999, Holmes stopped his bicycle on Oakmont  Avenue to talk to a friend who was in a car.  (T. 167-68, 171.)  While stopped, he saw two men "tussling" in the  street near a "Jimmy" truck.  (T. 168-172.)  He heard a gunshot and saw one man make a grabbing motion and fall to the ground.  (T. 172-73.)  The other man then ran within fifty feet of Holmes, and Holmes saw that it was Weathers, whom he had known for about a year.  (T. 173-180.)

An autopsy revealed that Reid died of a .25 caliber bullet wound that penetrated his lung, heart, liver and diaphragm.  (T. 506, 523.)  Both Holmes and Weathers' former girlfriend, Rossalyn Pruitt, testified, respectively, to having seen petitioner with a .25 caliber gun / small gun at some time within the four month period prior to Reid's shooting.  (T. 187-88, 191, 274.)

Pruitt testified that she was with Weathers on the day of Reid's shooting from approximately 3:00 p.m. to 4:30 p.m., at which time he left her home.  (T. 249-50.)  The shooting occurred at approximately 5:00 p.m.  (T. 325-26, 341.)  Pruitt again saw Weathers sometime between 6:00 and 6:30 p.m., after he called and asked her to meet him on a street corner.  (T. 251-52.)  Weathers told her he had robbed and shot someone.  (T. 253, 255.)  Twice during that evening, Weathers also told Pruitt that he had to get rid of something, but did not say what.  (T. 258, 264.)

After meeting on the street corner, Weathers and Pruitt first walked to an acquaintance's apartment because Weathers did not want to be seen outside.  (T. 253-54.)  At the apartment, Weathers purchased a bottle of brandy with a twenty dollar bill he took

2

from a bundle of cash.  (T. 314).  Later that evening, Weathers hired a cab to transport him and Pruitt to a hotel and he provided her with one hundred dollars in cash to pay for a room.  (T. 261-63.)  Weathers was not employed at the time and Pruitt had never known him to work.  (T. 256.)  When Reid's personal property was collected by police, one hundred, ninety-seven dollars was catalogued—less than the two hundred and fifty to five hundred dollars he typically collected daily.  (T. 401-402, 140-41.)

A jury found Weathers guilty of murder in the second degree and two counts of robbery in the first degree.  Weathers was acquitted on the fourth count against him, criminal possession of a weapon.  A judgment of conviction was entered on April 3, 2000, and Weathers was sentenced as a second felony offender.

**B.     The Direct Appeal and Collateral Motions**

On May 13, 2000, Weathers' appellate counsel timely appealed to the New York State Supreme Court, Appellate Division, Fourth Department ("Appellate Division"), arguing that: (1) the trial court erred in permitting Holmes' and Pruitt's testimony about Weathers' prior possession of a handgun and in failing to give a limiting instruction; (2) the evidence is insufficient to support the conviction; (3) the verdict is against the weight of the evidence; (4) Weathers was denied effective assistance of trial counsel; (5) Weathers was improperly adjudicated a second felony offender; and (6) the sentences are unduly harsh and excessive. (Docket No. 6, Ex. B.)  The Appellate Division unanimously affirmed Weathers' conviction, finding that the contentions of error in permitting the prior possession of a handgun testimony and in failing to dismiss for insufficient evidence were unpreserved for

review, and the remaining contentions lacked merit.[2] People v. Weathers, 299 A.D.2d 964 (4th Dep't 2002).  Appellate counsel sought leave to appeal to the New York State Court of Appeals, urging that the trial court erred in receiving Holmes' and Pruitt's testimony about the prior gun possession, the Appellate Division erred in concluding this issue was unpreserved, and Weathers did not receive the effective assistance of counsel at trial. (Docket No. 6, Ex. C.)  Leave to appeal was denied on January 30, 2003.  People v. Weathers, 99 N.Y.2d 586 (2003).

On three occasions, Weathers moved *pro se* to vacate the judgment pursuant to C.P.L. § 440.10.  In his first motion, dated March 15, 2002, Weathers argued that (1) the evidence was insufficient to support his conviction, and (2) the guilty verdicts of robbery in the first degree are repugnant in light of his acquittal of criminal possession of a weapon. (State Court Records, Vol. 2 of 3.)  The trial court denied the motion on May 28, 2002, on the ground that the issues raised could be reviewed on the then-pending direct appeal.[3] (*Id.*)

The second motion, dated June 3, 2003, attacked the validity of the conviction on the grounds that (1) the prosecutor unconstitutionally challenged prospective jurors based solely on their race and (2) Weathers' trial counsel was ineffective.  Again, the trial court denied the motion on procedural grounds, concluding that each issue either had been raised and decided on direct appeal, C.P.L. § 440.10(2)(a), or Weathers had unjustifiably

---

[2]  As to ground five, the judgment was modified by vacating the sentence imposed on the robbery counts and remitted to the trial court for resentencing.  The modification related solely to sentencing.

[3]  The trial court cited C.P.L. § 440.10(2)(b), which provides that: "the court must deny a motion to vacate a judgment when . . . [t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."

failed to raise it on appeal even though there were sufficient facts appearing on the record to do so, C.P.L. § 440.10(2)(c).[4]  (State Court Records, Vol. 2, Memorandum and Order dated Sept. 8, 2003.)

Weathers' third motion, dated August 28, 2004, urged that he possessed new evidence showing prosecutorial misconduct and that he received ineffective assistance of trial counsel.  (State Court Records, Vol. 2.)  The trial court denied the motion in all respects on December 22, 2004, deciding the prosecutorial misconduct claim and two grounds for the ineffective assistance claim (the failure to request a Sandoval hearing and failure to adduce certain eyewitness evidence) on the merits.  The remainder of the ineffective assistance claim was rejected on procedural grounds, pursuant to C.P.L. § 440.10(2)(a).  (*Id.*)

In each instance, Weathers sought leave to appeal the denial of his 440.10 motions, and in each instance, permission to appeal was denied.  (Petition at 4-6; Docket No. 6, Ex. D.)

## C.    The Instant Petition

This habeas petition followed in which Weathers claims the following grounds for relief: (1) the testimony of Holmes and Pruitt regarding his alleged possession of a .25 caliber handgun deprived him of a fair trial; (2) the evidence is insufficient to support a guilty verdict; and (3) trial counsel was unconstitutionally ineffective.  The petition was timely filed on March 2, 2005.  By a letter to the Court, dated April 7, 2005, Weathers

---

[4]  The trial court did consider the merits of one argument relating to Weathers' ineffective assistance claim that involved an affidavit dehors the record, but that issue is not raised in the instant habeas petition.

supplemented his petition by alleging that his appellate counsel was ineffective for failing to challenge the constitutionality of the trial court's charge to the jury on the felony murder count.  (Docket No. 4.)

### III. DISCUSSION

**A.      Exhaustion**

Respondent argues, and this Court agrees, that Weathers' supplemental claim of ineffective assistance of appellate counsel has not been exhausted.

It is fundamental that a state prisoner who claims that he is incarcerated in violation of his federally protected rights must first exhaust all the state court remedies available to him.  28 U.S.C. § 2254(b)(1)(A);  *see* Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004); Picard v. Connor, 404 U.S. 270, 275-78, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971).   The Supreme Court has made clear that "the exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."   Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

To fulfill the exhaustion requirement, a habeas petitioner must have fairly presented the substance of all his constitutional claims to the state court in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Picard, 404 U.S. 275-76;  Duncan v. Henry, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995).  It is clear from the record in this case that Weathers never raised an ineffective assistance of appellate counsel claim in the state courts.  Moreover, Weathers is not procedurally barred from exhausting this claim because he could still raise it in an

application to the Appellate Division for a writ of error coram nobis.  Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001) (quoting People v. Gordon, 183 A.D. 2d 915 (2d Dep't 1992) (in a criminal action, writ of error coram nobis lies in the state appellate court to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel).

In Rose v. Lundy, the Supreme Court adopted a "total exhaustion" rule for habeas petitions by holding that a "mixed petition"—that is, one containing both exhausted and unexhausted claims—should be dismissed as a whole, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court."  455 U.S. at 510. However, in 1996, Congress modified this "exhaustion rule" by the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254(b)(2) to read as follows: "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available to the courts of the State." (emphasis supplied).  In other words, the failure to exhaust does not prevent this Court from reaching the merits of Weathers petition if all claims, exhausted and unexhausted, will be denied.

The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district courts in this Circuit have embraced a "patently frivolous" test for their dismissal.  Naranjo v. Filion, 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, at *30 (S.D.N.Y. Apr. 16, 2003) (citing Hammock v. Walker, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002); Cruz v. Artuz, 97-CV-2508, 2002 U.S. Dist. LEXIS 1142, at *25 (E.D.N.Y. June 24, 2002), Pacheco v. Artuz, 193

F. Supp. 2d 756, 761 (S.D.N.Y. 2002); <u>Rowe v. New York</u>, 99 Civ. 12281, 2002 U.S. Dist. LEXIS 1142, at *14-15 (S.D.N.Y. Jan. 25, 2002); <u>Love v. Kuhlman</u>, 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572, at * (S.D.N.Y. Dec. 12, 2001); <u>Shaw v. Miller</u>, 99 CV 5020, 2002 U.S. Dist. LEXIS 8715, at * n.2 (E.D.N.Y. June 26, 2001); <u>Santana v. Artuz</u>, 97 Civ. 3387, 2001 U.S. Dist. LEXIS 5746, at * (S.D. N.Y. May 1, 2001)).

Upon a review of the record, the Court finds that Weathers' ineffective assistance of appellate counsel claim is patently frivolous.  To prove a claim of ineffective assistance of appellate counsel, Weathers must show that: 1) his lawyer's performance fell below an objective standard of reasonableness; and 2) but for the errors of his lawyer, the result of the proceeding would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-89, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001) (<u>Strickland's</u> two-prong test for ineffective assistance of trial counsel applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right) (citing <u>Evitts v. Lucey</u>, 469 U.S. 387, 396-97, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985)).  Generally, a habeas petitioner will be able to demonstrate that his attorney's decisions were objectively unreasonable only if "there [was] no . . . tactical justification for the course taken."  <u>United States v. Luciano</u>, 158 F.3d 655, 660 (2d Cir. 1998) (per curium).

Weathers' ineffective assistance of appellate counsel claim is based solely on the failure to challenge on appeal a purportedly erroneous jury instruction on the felony murder count.  Weathers' letter to this Court does not specify the nature of the alleged error.

The record in this case reveals that trial counsel's sole pre-charge request relative to jury instructions involved the "identification issue" relating to the Holmes and Pruitt prior

weapon possession testimony.  (T. 32-40, 554, 618-19.)  Trial counsel did not object to the court's instructions after they were given, even though there was no limiting instruction regarding the use of the weapon possession testimony for identification only.  (T. 657.)  In short, the sole issue arguably preserved at trial for appellate review was that the court should have given a limiting instruction on the use of the prior weapon possession testimony.  To the extent that Weathers' alleges that appellate counsel failed to raise this particular issue, he simply is incorrect.  The absence of a limiting instruction and the possible prejudice with regard to that testimony is raised twice at Point I of the appellate brief.  (Docket No. 6, Ex. B at 12, 15.)

To the extent Weathers believes that some other aspect of the jury charge was erroneous, appellate counsel's "failure" to argue an unpreserved issue was not an objectively unreasonable decision devoid of tactical justification.  Moreover, Weathers cannot demonstrate that the outcome of the appeal would have been different had an unpreserved issue been raised, where there is no basis to conclude that the appellate court would have considered the issue on the merits.  Accordingly, the Court finds that dismissal of Weathers' ineffective assistance of appellate counsel claim is warranted.

As set forth fully below, the remainder of Weathers' claims are either procedurally barred or without merit, thereby allowing for dismissal of the petition in its entirety.

## B. Procedural Bar

Federal courts generally will not consider a constitutional claim on habeas review "'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 151 L. Ed.

2d 820 (2002) (alteration and emphases omitted)).   A state law ground is adequate to support the judgment and thereby foreclose review of a federal claim if it is "firmly established and regularly followed" in the state.  <u>Lee</u>, 534 U.S. at 376.  Where the state relies on an adequate state law ground, federal review of the claim is warranted only where application of the rule in light of the circumstances of a particular case is "exorbitant."  *Id.* In <u>Lee</u>, the Supreme Court set forth three factors for determining whether the application of a state procedural rule is exorbitant:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision;
>
> (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and
>
> (3) whether petitioner has "substantially complied" with the rule given "the realities of trial" and therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

534 U.S. at 382.  While the Second Circuit has declined to consider these three factors a test for determining adequacy, it applies the factors "as guides in evaluating 'the state interest in a procedural rule against the circumstances of a particular case.'" <u>Garvey</u>, 485 F.3d at 714 (quoting <u>Cotto v. Herbert</u>, 331 F.3d 217, 240 (2d Cir. 2003)).

In this case, respondent urges that grounds one and two of Weathers' petition are procedurally barred, thereby foreclosing review on the merits.

### 1.   Ground One - Testimony regarding Prior Possession of a Weapon

Weathers claims at ground one of his petition that he was deprived of a fair trial when the court permitted Holmes and Pruitt to testify to having seen Weathers with a handgun two or more months before the Reid shooting.  The Appellate Division held that

Weathers "failed to preserve for our review his contention that Supreme Court erred in permitting the People to present eyewitness testimony that defendant possessed a .25 caliber handgun (*see* CPL 470.05(2))." People v. Weathers, 299 A.D.2d 964.

"'The question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question.'" Cotto, 331 F.3d at 239 (quoting Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (alteration in original)). Therefore, this Court must ascertain whether the state rule at issue here—C.P.L. § 470.05(2)—is firmly established and regularly followed, and whether its application in this case would be exorbitant. This requires an examination of the state statute and the caselaw construing it. Cotto, 331 F.3d at 243.

Under the statute at issue, a question of law is preserved for appeal with respect to a ruling or instruction of a criminal court:

> when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

C.P.L. § 470.05(2). This procedural rule, often referred to as the contemporaneous objection rule, is recognized as an independent and adequate state law ground for the disposition of claims. Day v. Taylor, 459 F. Supp. 2d. 252, 257 (S.D.N.Y. 2006) (citing Reyes V. Keane, 118 F.3d 136, 138 (2d Cir. 1997); Simpson v. Portuondo, 01 Civ. 8744,

2002 U.S. Dist. LEXIS 10536 (S.D.N.Y. June 4, 2002); People v. Whalen, 59 N.Y.2d 273, 279-80 (1983).

Weathers argues, however, that his objections to the testimony of Holmes and Pruitt were preserved and it was erroneous to apply this rule to his case. New York courts have explained that to preserve a claim of error in the admission of evidence at trial under § 470.05(2) a defendant must make his or her position known to the court. People v. Gray, 86 N.Y.2d 10, 19 (1995). The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the contested matter, so that it may be dealt with at that time. People v. Jones, 81 A.D.2d 22, 41-42 (2d Dep't 1981). A general objection is not sufficient. "New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error." Garvey, 485 F.3d at 714 (citations omitted).

In this case, the prosecutor gave pre-trial notice of its intent to move for the introduction of eight items of Molineux/Ventimiglia evidence, including the testimony of Holmes and Pruitt that is the subject of Weathers' first ground for relief. (T. 26-40.) The prosecutor indicated that both of these witnesses would testify to having seen Weathers with a gun within two months prior to the Reid shooting. (T. 33.) Trial counsel objected to seven of the eight items. Counsel expressly objected to the admissibility of the Holmes and Pruitt testimony (T. 32), arguing that a timeframe of two months was too remote to be of probative value (T. 27-28), that .25 caliber handguns are very common and neither witness could testify to any distinguishing characteristics (T. 31, 39-40), and that the testimony was unduly prejudicial in that it would predispose the jury to a guilty verdict (T. 31). The trial judge issued rulings with respect to each item objected to and determined

12

that the Holmes and Pruitt weapons possession testimony would be allowed.  (T. 40.)
Before either party could voice objections to the various rulings, the trial judge noted that
"[y]ou each have your exceptions."  (T. 40.)  At the close of trial, both counsel renewed all
motions previously made and the judge reaffirmed its prior rulings and exceptions.  (T.
572.)

Where, as here, defense counsel made particularized objections to the admissibility
of testimony and the trial judge acknowledged counsel's exceptions to his unfavorable
ruling, counsel was deemed to have protested the ultimate disposition of the matter and
nothing more was required to preserve the claim.  C.P.L. § 470.05(2);  People v. Resek,
3 N.Y.3d 385, 388 n.1 (2004) (after noting that defendant had made pointed objections to
admission of testimony regarding prior arrest, the court declined to "impose a preservation
rule so extreme that defendant, to succeed, would have to antagonize the court" with
repeated protests, finding that such a rule would "do nothing to advance the objectives of
our preservation doctrine").

"Though a rule [such as C.P.L. § 470.05(2)] in general terms might be considered
'firmly established and regularly followed,' such a rule considered in the specific
circumstances of a case might be inadequate to preclude federal habeas review."  Monroe
v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006).  Viewing the circumstances here in light of
the Lee factors, this Court concludes that trial counsel did fully comply with the state court
rule relied on as a procedural bar, making this one of the "exceptional cases in which
exorbitant application of a generally sound rule renders the state ground inadequate to stop
consideration of a federal question."  Lee, 534 U.S. at 376.  Accordingly, consideration of
the merits of ground one is not procedurally barred.

13

### 2.      Ground Two - Insufficient Evidence to Support the Conviction

At ground two of his petition, Weathers contends that the prosecution failed to establish that any robbery occurred or, more specifically, that Reid's shooting occurred during the commission of a robbery.  The Appellate Division found, on direct appeal, that "[d]efendant's general motions to dismiss the indictment at the close of the People's case and after a witness had testified for defendant did not preserve for our review defendant's present contention" that the evidence of a robbery was legally insufficient.  People v. Weathers, 299 A.D.2d 964.

At the close of the prosecution's case, defense counsel "move[d] to dismiss the people's case on the grounds they haven't met their burden."  (T. 552.)  Counsel did not identify which count(s) of the indictment were being challenged or which element(s) of the challenged crime(s) had not been proven.  (T. 552-53.)  Under caselaw applying New York's contemporaneous objection rule, this generalized motion was not sufficient to preserve a specific objection to the legal sufficiency of evidence of a robbery.  See People v. Parsons, 30 A.D.3d 1071, 1072 (4th Dep't 2006) ("Defendant failed to preserve for our review his further contention that the evidence is legally insufficient to establish that he set the fire [that killed five people] inasmuch as his motion to dismiss was not specifically directed at that alleged insufficiency."); see also, People v. McLane, 256 A.D.2d 10, 10-11 (1st Dep't 1998) ("By failing to elaborate on the basis for his objection . . . defendant failed to provide the court with a fair opportunity to rectify any error and failed to preserve the issue for appellate review.").  In sum, the state court's judgment on this legal insufficiency claim rested on a state law ground that is independent of the federal question raised and adequate to support the judgment.

In such procedural default cases, a district court may review a petitioner's habeas claims "only if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will 'result in a fundamental miscarriage of justice.'" Day, 459 F. Supp. 2d at 256 (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).  "Cause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by state officials made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (internal quotation marks omitted).  To demonstrate prejudice, a petitioner must show that the errors did not just create a possibility of prejudice, but "that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  Where no cause for and prejudice from the procedural default is shown, a federal habeas court still may review claims "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," thereby preventing a fundamental miscarriage of justice. Murray, 477 U.S. at 496; see also, Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).

Ground two of Weathers' habeas petition presents no cause for the default.  Nor does Weathers' "Traverse" address respondent's arguments with respect to ground two. (Docket No. 12, responding to arguments for dismissal of grounds one and three of the petition only.)  However, because Weathers is proceeding *pro se*, his pleadings must be accorded liberal interpretation.  Ground three of the petition alleges ineffective assistance

15

of trial counsel, and the Traverse identifies trial counsel's "failure to properly preserve several constitutional issues for appellate review" as one of several bases for the ineffective assistance claim.  (*Id.* at 7.)  Therefore, the Court interprets Weathers' petition as including the argument that the reason for the procedural default with respect to ground two was that his trial counsel was ineffective.

The ineffective assistance of trial counsel claim is fully exhausted and each basis for the claim is considered on the merits below.   For the reasons set forth in that discussion, the Court concludes that Weathers has not demonstrated actual prejudice resulting from counsel's failure to make a particularized motion based on insufficient evidence.   In sum, Weathers has not shown cause and prejudice sufficient to overcome a procedural default with respect to ground two of his petition.[5]

**C.      The Merits of Petitioner's Exhausted Claims**

Because Weathers filed his petition after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, AEDPA's revisions of 28 U.S.C. § 2254 apply to this proceeding.  *See* Williams v. Taylor, 529 U.S. 362, 402, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus on a claim adjudicated on the merits in state court unless that decision was (1) "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." Monroe, 433 F. 3d at 245 (*quoting* 28 U.S.C. § 2254(d)).   A writ of habeas corpus is

---

[5]  Weathers argues cause and prejudice only; he does not attempt to demonstrate actual innocence.

justified only if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the petitioner's case. <u>Williams</u>, 529 U.S. at 413.  A state court's factual determinations enjoy a "presumption of correctness" that "the petitioner must rebut with clear and convincing evidence." <u>Deberry v. Portuondo</u>, 403 F. 3d 57, 66 (2d Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)).

### 1.    Ground One - Denial of Due Process Right to a Fair Trial

Weathers argues that the trial court's admission of testimony regarding his prior possession of a weapon violated the due process clause.  It is well settled that rulings by state trial courts on evidentiary matters generally are a matter of state law and pose no federal constitutional issue. <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice." <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied*, 525 U.S. 840, 119 S. Ct. 101, 142 L. Ed. 2d 81 (1998).  Thus, even where the state court ruling was erroneous, habeas relief is not available unless the error resulted in a trial that "deprive[d] the defendant of fundamental fairness," thereby violating due process rights guaranteed by the federal constitution. <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 924 (2d Cir. 1998).  "The petitioner bears a 'heavy burden' in seeking to establish that improperly admitted evidence deprived him of his right to a fair trial." <u>Neloms v. Brown</u>, 05 Civ. 8162, 2007 U.S. Dist. LEXIS 18564, at *22 (S.D.N.Y. Mar. 19, 2007) (citations omitted).  "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the

17

defendant's right to due process." <u>Dunnigan</u>, 137 F.3d at 125 (quoting <u>Estelle</u>, 502 U.S. at 69). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" <u>Dunnigan</u>, 137 F.3d at 125 (quoting <u>Johnson v. Ross</u>, 955 F.2d 178, 181 (2d Cir. 1992).

Having reviewed the record in this case, the Court concludes that the admission of the prior weapon possession testimony did not violate fundamental conceptions of justice. At the <u>Molineux/Ventimiglia</u> hearing, the prosecutor urged that the issue of identification would be central to the trial, given that he had just one eyewitness who was only fifteen years old. He went on to state that testimony that Weathers had possessed the same caliber weapon as the bullet found in the victim and a shell casing recovered from the scene was being offered for identification, not *modus operandi* or propensity to commit the crime. (T. 32-33, 37-38.) The trial court agreed to admit the testimony on that basis. Even if prejudicial, the testimony was probative of an essential element of the case—the shooter's identity—and therefore not violative of due process.

Moreover, even if the testimony had not been probative of an essential element, Weathers has failed to show that the testimony provided a basis for conviction or removed reasonable doubt that otherwise existed. The clearest indicia that the jury did not rely on the prior weapon possession testimony as a basis for conviction is that it acquitted Weathers on the fourth count of the indictment, which charged him with criminal possession of a weapon. As for reasonable doubt, strong proof of Weathers' guilt was presented at trial. An eyewitness who had known Weathers for a year saw him tussle with

18

and shoot Reid.  Another witness confirmed that Weathers had known Reid for a number of years and knew that he carried cash daily.  Within an hour or two of the shooting, Weathers told his then-girlfriend that he shot and robbed someone.  That evening, he had money to spend on liquor and a hotel room, though he did not have a job.  Based upon the record, this Court concludes that Weathers has not met his heavy burden of showing that had the challenged testimony not been admitted, reasonable doubt of his guilt would have existed at trial.

Because Weathers has not demonstrated the existence of fundamental unfairness such that his right to due process was violated, ground one of his habeas petition must be dismissed.

### 2.    Ground Three - Ineffective Assistance of Trial Counsel

As already noted, to prove a claim of ineffective assistance of trial counsel, Weathers must show that: 1) his lawyer's performance fell below an objective standard of reasonableness; and 2) but for the errors of his lawyer, the result of his trial would have been different.  Strickland, 466 U.S. at 687-89.  This is a formidable standard in that it permits a wide range and variety of acceptable approaches for defending a criminal case, and carries with it a strong presumption that the challenged attorney conduct was reasonable.  Id. at 689.  As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Lindstadt v. Keane, 239 F.3d  191, 199 (2d Cir. 2001).

> To determine whether a counsel's conduct is deficient, 'the court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance.' In gauging the deficiency, the court must be 'highly deferential,' must 'consider[ ] all the circumstances,' must make 'every effort . . . to eliminate

the distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'

*Id.* at 198-99 (quoting <u>Strickland</u>, 466 U.S. at 688-90); <u>Luciano</u>, 158 F.3d at 660 (petitioner must demonstrate that there was no tactical justification for the course taken by counsel).

As for prejudice resulting from inadequate counsel:

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. To merit habeas relief, the defendant must show that the deficient performance prejudiced the defense. The level of prejudice the defendant need demonstrate lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the outcome in the case. Thus the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The Court defined reasonable probability as one that undermines confidence in the outcome.

<u>Lindstadt</u>, 239 at 204 (alterations in original, internal citations and quotation marks omitted).

The focus of the habeas court's inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. <u>Strickland</u>, 466 U.S. at 696. This Court need not address both prongs of the ineffective assistance inquiry "if the defendant makes an insufficient showing on one." *Id.* at 697.

Weathers advances five bases for his ineffective assistance claim: (1) counsel made only a cursory motion for dismissal at the close of the prosecution's case and the trial; (2) counsel did not request limiting instructions relative to testimony identifying Weathers in possession of a handgun prior to the shooting; (3) counsel failed to object to a repugnant verdict; (4) counsel failed to request a <u>Sandoval</u> hearing; and (5) counsel failed to adduce

certain testimony at trial.[6]

### a.    Failure to Move for Dismissal based on Insufficient Evidence

As noted above at III(B)(2), the Court liberally reads the first basis of ground three as relating to counsel's failure to move for dismissal on the ground that the evidence was insufficient to support a conviction for robbery and, by extension, for second degree murder.  The Appellate Division rejected this ineffective assistance claim on the merits on direct appeal, and that decision should not be disturbed unless it was contrary to, or involved an unreasonable application of, federal law.  28 U.S.C. § 2254(d).

Weathers' does not discuss the merits of his insufficient evidence claim in his Traverse and the only prejudice he identifies with respect to the claim is the inability to raise this issue on direct appeal.  (*See generally*, Docket No. 12.)  He does not claim that any prejudice resulted at trial.  (*Id.*)

Had Weathers argued the merits, he could not have shown a reasonable probability that the outcome of his trial or appeal would have been different had trial counsel preserved the insufficient evidence issue. The standard for reviewing a sufficiency of the evidence claim is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  The prosecution presented evidence that Weathers admitted to his girlfriend, within an hour or two of Reid's shooting, that he had robbed and shot someone.

---

[6] Weathers' Traverse does not discuss the first four bases.  Rather, he argues that trial counsel did not conduct a sufficient pretrial investigation and did not permit him to take the stand to testify to the accidental nature of his shooting of Reid.

An eyewitness saw Weathers shoot Reid.  Weathers had seen Reid at his grandmother's house collecting money and knew he carried cash.  At the crime scene, there were betting slips and money scattered around Reid's body.  (T. 115-16.)  The hospital and police recovered less money from the scene and Reid's body than he typically carried.  A few hours after the Reid's shooting, Weathers, who had no job, had money to spend on liquor and a hotel.  Viewing this evidence in the light most favorable to the prosecution, this Court cannot conclude that, had trial counsel made a particularized motion to dismiss, there was a reasonable probability that Weathers would have been acquitted of robbery and second degree murder.[7]

### b.   Failure to Request Limiting Instructions Regarding Identification Testimony

As noted at Point III(A), trial counsel did, in fact, request that the trial judge charge the jury on the "identification issue" relating to the Holmes and Pruitt prior weapon possession testimony.  (T. 32-40, 554, 618-19.)  Even assuming Weathers intended to argue that the request was insufficiently made, or that trial counsel did not object to the court's failure to actually give the requested instruction, he has not demonstrated any prejudice resulted from the absence of the limiting instruction.

As the Court already determined at Point III(C)(1), *supra*, Weathers has not shown that the jury used the testimony as a basis for his conviction (having acquitted him of a weapon possession charge) or that there was reasonable doubt about his guilt, but for the prior weapon possession testimony.  In short, Weathers has not met his burden of showing

---

[7] To the extent Weathers relies on ineffective assistance of counsel to overcome the fact that ground two of the petition is procedurally defaulted, the argument must fail based on his inability to demonstrate prejudice.

a reasonable probability that, had the jury received the limiting instruction, the result of the trial would have been different.

### c.    Failure to Object to a Repugnant Verdict

Weathers' petition does not explain the basis for his assertion that the jury returned a repugnant verdict to which trial counsel should have objected.  However, in the ineffective assistance claim advanced on Weathers' direct appeal, appellate counsel argued that his conviction of felony murder and first degree robbery was legally repugnant to the acquittal on the weapon possession charge.  In essence, counsel urged that because the first degree robbery count required proof that Weathers was armed with a deadly weapon in the course of the commission of that crime, and the jury acquitted him on the criminal possession of a weapon charge, he could not have been found guilty of robbery in the first degree and felony murder.

The charge given to the jury did not require a guilty verdict on count four to find guilt on any other count.  (T. 643-51.)  The criminal possession of a weapon charge required an intent to use a firearm unlawfully against another, an element not present in any other count of the indictment.  (*Id.*)  New York courts have declined to find that a verdict is inconsistent or repugnant where the acquitted crime contains an element not found in the convicted crime.  *See* People v. Mabry, 288 A.D. 2d 326 (2d Dep't 2001), *lv. denied*, 97 N.Y.2d 706 (2002) (acquittal on criminal possession of weapon charge did not render convictions for murder in second degree and attempted robbery in first degree repugnant).

In addition, Weathers does not contend here, nor did he argue in the state courts, that the elements of any count were charged incorrectly, or that the verdict on any count was at odds with the trial court's charge to the jury on that count.  "As courts in New York

have noted, 'It matters not how the jury reached its verdict or even if the verdict is logically inconsistent provided the verdict is not at odds with the charge.'" Youngblood v. Conway, 426 F. Supp. 2d 107, 119 (W.D.N.Y. 2006) (quoting People v. Hankinson, 119 A.D.2d 506, 508 (1st Dep't 1986); *see also*, People v. Gary, 162 A.D.2d 277 (1st Dep't 1990).

Because it is likely that Weathers' repugnant verdict argument would not have been successful, he was not prejudiced by trial counsel's failure to object to the verdict.

### d.    Failure to Request a Sandoval Hearing

Prior to trial, counsel made, but later withdrew, a Sandoval motion.  (T. 26.)  The purpose of a Sandoval hearing is to provide the defendant with an advance ruling on whether the People will be permitted to cross-examine him or her about particular criminal (charged or uncharged), vicious, or immoral conduct for the purpose of impeaching credibility should he or she testify at trial.  People v. Morales, 308 A.D.2d 229, 232 (2d Dep't 2003) (citing People v. Sandoval, 34 N.Y.2d 371 (1974)).  Weathers did not testify at trial.  Though presented as a Sandoval claim, Weathers apparently objects to counsel's purported decision not to allow him to testify at trial.

Weathers' claim of ineffective assistance in this regard was raised first in a C.P.L. § 440 motion, where he alleged that he had sought to testify that the prior gun possession evidence adduced by the prosecution related to a weapon he was arrested for in November 1998.  (Docket No. 6, Ex. A, § 440 Motion dated August 28, 2004 at 14.)  The trial court, in a decision on the merits dated December 22, 2004, stated:

> The court fails to perceive how such testimony would have benefitted the defendant.  Since neither Holmes and [sic] Pruitt were able to pinpoint the date on which the defendant previously possessed a firearm, their testimony was not especially harmful to the defense.  To the contrary, defendant's proposed testimony that he was arrested for possession of a firearm would

24

be extremely damaging.   Therefore, the defendant has shown no viable basis to conclude that he should have testified.

*(Id.* Memorandum and Order at 3-4.)

In support of the instant petition, Weathers now argues that he told trial counsel he wished to testify at trial that it was Reid who possessed a gun, it was Reid who initiated their struggle, Weathers reacted by grabbing the arm in which Reid held the gun and the gun somehow went off, killing Reid.  (Docket No. 12 at 8-10.)

As previously noted, identification was crucial to this case.  There was no forensic evidence linking Weathers to the crime scene and defense counsel sought to call into question the testimony of the sole witness, a young teenager.   This Court can see no benefit to Weathers in countering trial counsel's defense strategy by taking the stand and admitting the shooting.  Even assuming the truth of Weathers' assertions that he wished to testify at trial on various matters but was prevented from doing so by counsel, he has not shown that counsel's strategy fell below an objective standard of reasonableness or that he was prejudiced as a result.

### e.    Failure to Adduce Misidentification Testimony

The petition alleges that counsel failed "to adduce testimony that eyewitness 'misidentified two (2) alleged accomplices.'" The Traverse provides no explanation for this statement and Weathers' August 28, 2004 § 440.10 motion, where the issue was first raised, stated only that counsel "failed to use the evidence that the single eyewitness had misidentified two alleged accomplices."   (Docket No. 6, Ex. A, 440 Motion at 14.)   In rejecting this argument on the merits, the trial court noted that it was "devoid of any substantiation that the witness in fact identified anyone other than the defendant, or that

the defendant acted in concert with others."  There is simply no basis for concluding that counsel erred in failing to use evidence that is not part of the record and which Weathers has not proven exists.  Weathers' speculative assertions provide no ground for relief.

## IV. CONCLUSION

For the reasons stated, Weathers' petition is denied in its entirety.

Because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that Weathers has not made a substantial showing of the denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2), and accordingly this Court denies a certificate of appealability.

This Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith.  As a result, this Court denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

Weathers must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit according to the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## ORDERS

IT HEREBY IS ORDERED, that the petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Docket No. 1), is DENIED.

FURTHER, that a certificate of appealability is DENIED.

FURTHER, that leave to appeal as a poor person is DENIED.

FURTHER, that the Clerk of this Court is directed to take the necessary steps to

close this case.

SO ORDERED.

Dated:  August 9,  2007
          Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge